NOT FOR PUBLICATION                                [Dkt. Ent. No. 1]

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

---

KEVIN MAYFIELD,                     :

       Petitioner,             : Civil Action No. 11-2950 (RMB)

       v.                      :            **OPINION**

UNITED STATES OF AMERICA            :

       Respondent.             :

---

Appearances:

Kevin Mayfield
#41419-050
F.C.I. Schuylkill
P.O. Box 759
Minersville, Pennsylvania 17954
    Pro Se Petitioner

Alyson M. Oswald, AUSA
Office of the U.S. Attorney
District of New Jersey
P.O. Box 2098
Camden, New Jersey 08101
    Attorneys for Respondent

**BUMB,** UNITED STATES DISTRICT JUDGE:

    Currently before the Court is the motion of Petitioner Kevin Mayfield ("Petitioner" or "Mayfield") to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (the "Petition"). The United States has filed an Answer responding to the Petition. The Court has considered the parties' submissions,

and for the reasons set forth below, denies the motion.

**I. Background**

On July 10, 2007, Mayfield was arrested pursuant to a federal criminal complaint, charging him with conspiring to transport minors in interstate commerce with the intent that they engage in prostitution, in violation of 18 U.S.C. § 2423(a) and (e). On October 9, 2007, a grand jury sitting in the District of New Jersey returned a three-count indictment against Petitioner, charging him with the same conspiracy offense alleged in the Complaint, a substantive violation of 18 U.S.C. § 2423(a) and pandering or advertising of child pornography, in violation of 18 U.S.C. § 225A(a)(3)(B).

On September 29, 2008, a jury convicted Petitioner on all counts. On January 8, 2009, the Court sentenced Petitioner to three concurrent terms of 200 months imprisonment; required Petitioner to serve a life-term of supervised release; and imposed a $500 fine. Petitioner filed a premature notice of appeal on January 9, 2009, which ripened when a final judgment was entered on January 16, 2009.

In his direct appeal, Petitioner argued that the Court erred in denying a motion to dismiss based on statutory speedy trial grounds and that the Court erred in denying a motion to suppress statements made at two pre-trial proffer sessions. On January 22, 2010, the Third Circuit Court of Appeals affirmed

Petitioner's conviction on the merits and affirmed his sentence. Mayfield's petition for a writ of certiorari to the United States Supreme Court was denied on May 24, 2010.

## II. The Trial

At trial, the United States presented evidence that, in approximately May 2007, Mayfield and co-conspirator Casson Coward met minors J.B. and A.B., aged 16 and 14 years respectively, outside the minors' home in Pennsylvania, with the intention of ultimately having J.B. and A.B. engage in prostitution. Mayfield and Coward exchanged phone numbers with the minors. Approximately two weeks later Coward drove to Pennsylvania and picked up both minors. After all three took Ecstasy pills, Coward drove A.B. and J.B. to a hotel. Mayfield arrived at the hotel some time later, where he rented a room for himself and J.B. After a brief interlude wherein Coward and Mayfield drove the minors to a bar and left them outside for about ten minutes, they all returned to the hotel where J.B. stayed in Mayfield's room and A.B. stayed with Coward.

Two days later, Mayfield and Coward transported J.B. and A.B. to New Jersey. Mayfield rented a room for himself and J.B. at the Sunnyside Motel in Egg Harbor Township, New Jersey, under the alias "James Wilson." In the hotel room, Mayfield took nude pictures of J.B. The next day, June 7, 2007, Mayfield rented a room for himself and J.B. at the Crest Motel in Absecon, New

Jersey, again under the alias "James Wilson."

On June 7, 2007, an advertisement titled "Vanilla Treat ... W4M ... 2111" was uploaded to the Craig's List Internet site from an internet protocol ("IP") address registered to Kevin Crump, Petitioner's father.  Evidence at trial showed that Petitioner had a computer, that he had previously asked his father for an air card, which is used to go on the Internet, and that Mr. Crump bought an air card for his son, the Petitioner.[1]

The "Vanilla Treat" post on Craig's List contained a nude, sexually explicit photograph of 16-year-old J.B., along with a cell phone number and some writing in the style of an advertisement.  The number listed in the post was for a cell phone Petitioner had given to J.B. when they arrived in New Jersey.  When J.B. began receiving calls on that cell phone, Petitioner instructed her to tell callers that it was $150 for a half hour and $175 for a full hour.  J.B. testified at trial that she did not answer the calls and eventually told Petitioner she wanted to be taken home.  Petitioner initially refused because J.B. "didn't make money" by "having sex," but Petitioner later drove J.B. to Philadelphia, Pennsylvania, where he left her at a convenience store and instructed her to call Coward.  Petitioner

---

[1] Evidence showed that Crump did not go on Craig's List and never used the air card to post anything on Craig's List.  J.B. also testified at trial that she did not put her picture on the Internet.

testified that J.B. said she was 19 years old and a grown woman when he dropped her off in Philadelphia.

A.B. testified at trial that after being taken to New Jersey, Coward rented a room at a Travel Lodge Motel. Coward asked to photograph A.B. and asked whether she would agree to appear in a Craig's List advertisement for prostitution. A.B. agreed and Coward took nude photos of her and posted them on Craig's List from a laptop computer under a post titled "College Cute W4M-18." A.B. began receiving phone calls on the cell phone Coward had given her. A.B. answered two or three of the calls, and met with two individuals. A.B. had oral sex with the individuals, after which she charged $200, as she had been instructed to do by Coward. A.B. was eventually arrested after undercover agents accessed the Craig's List post.

Coward was arrested on June 8, 2007. Shortly thereafter, after learning that authorities were looking for him, Mayfield surrendered to the authorities in Atlantic City.

### III. Discussion

Petitioner argues that he was given ineffective assistance of counsel on the following three grounds: (1) failure to make (or wrongful withdrawal of) a motion for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure; (2) failure to investigate and call Petitioner's brother as a witness; and (3) failure to introduce inadmissible hearsay

statements of co-conspirator Casson Coward. The United States challenges each of these arguments. The Court first addresses the standard for ineffective assistance of counsel, and then, each of the Petitioner's claims.

### A. Standard For Ineffective Assistance of Counsel Claims

To prevail on an ineffective assistance of counsel claim, the petitioner must demonstrate that (1) counsel's performance was deficient, and (2) that this performance actually prejudiced the petitioner. Strickland v. Washington, 466 U.S. 668, 687 (1984). A counsel's performance is deficient if the errors made were so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Id.

The first Strickland prong is an objective standard of "reasonableness under prevailing professional norms." Id. at 688. The Constitution requires a fair trial, not some higher quality of legal representation. See id. at 688-89. Thus, the standard is "highly deferential" and there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.

The second Strickland prong is a subjective, totality-of-the-circumstances analysis of whether counsel's conduct "actually had an adverse effect on the defense." Id. at 693. A speculative or hypothetical effect is not enough. Id. There must be "a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

Strickland's standard "is highly demanding." Kimmelman v. Morrison, 477 U.S. 365, 382 (1986). "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test . . . and not every error that conceivably could have influenced the outcome undermines the reliability" of that outcome. Strickland, 466 U.S. at 693 (citation omitted).

### 1. Petitioner's Counsel Was Not Ineffective By Withdrawing Or By Failing to Make A Motion For Acquittal

Petitioner argues that his trial counsel was ineffective in withdrawing a motion for acquittal made pursuant to Federal Rule of Criminal Procedure 29.[2] The United States responds that Petitioner can show no prejudice because, even if Petitioner's counsel had persisted with a motion for acquittal, the Court would have denied it.

---

[2] The record reflects that the Petitioner - not his counsel - made the Rule 29 motion before the Court. Generally, the Court will not consider pro se motions made by a defendant who is represented by counsel. United States v. Essig, 10 F.3d 968, 973 (3d Cir. 1993). Even if the Court had considered the motion as properly made by defense counsel, it was not ineffective assistance of counsel for defense counsel to withdraw it because, as discussed *infra,* no prejudice resulted.

7

Federal Rule of Criminal Procedure 29 permits a defendant to submit a motion for a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction within fourteen days after a jury verdict.  Fed. R. Cr. P. 29(a)i(c)(1). To determine whether a jury verdict rests on legally sufficient evidence for Rule 29 purposes, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (emphasis in original).  All evidence must be viewed in the light most favorable to the government.  Id. at 319.  Indeed, "'[o]nly when the record contains no evidence, regardless of how it is weighted, from which the jury could find guilt beyond a reasonable doubt, may an appellate court overturn the verdict.'" United States v. Anderson, 108 F.3d 478, 481 (3d Cir. 1997) (quoting United States v. McNeill, 887 F.2d 448, 450 (3d Cir. 1989)).

"Inferences from established facts are accepted methods of proof when no direct evidence is available so long as there exists a logical and convincing connection between the facts established and the conclusion inferred." McNeill, 887 F.2d at 450."  The fact that evidence is circumstantial does not make it less probative than direct evidence." McNeill, 887 F.2d at 450.

8

Here, Petitioner contends that the evidence was insufficient to support a conviction for advertising child pornography in violation of 18 U.S.C. § 2252A(a)(3)(B).  Contrary to Petitioner's claim, and viewing all of the evidence in the light most favorable to the prosecution, however, the trial record demonstrates that a rational trier of fact could have found the following essential elements under 18 U.S.C. § 2252A(a)(3)(B) were satisfied beyond a reasonable doubt.

> First:  That the defendant knowingly advertised, promoted, presented, or distributed an obscene visual depiction of a minor engaging in sexually explicit conduct or a visual depiction of an actual minor engaged in sexually explicit conduct;
>
> Second:  That such visual depiction had been distributed through the mail or in interstate commerce or foreign commerce by any means, including by computer, as charged; and
>
> Third:  That at the time of such distribution the defendant believed that such items constituted or contained an obscene visual depiction of a minor engaging in sexually explicit conduct or a visual depiction of an actual minor engaged in sexually explicit conduct.

18 U.S.C. § 2252A{a)(3)(B).

The jury heard evidence that on June 6, 2007, Mayfield took nude, sexually explicit pictures of 16 year-old J.B. at the Sunnyside Motel.  The evidence also inferentially showed that Petitioner posted one of those nude, sexually explicit photographs of J.B. to the Internet site Craig's List using an IP address registered to Mayfield's father.  Indeed, the United States introduced evidence that showed Petitioner's possession of

a computer and that Petitioner's father had bought an air card for Petitioner, which would have allowed Petitioner to access the Internet.  The United States also introduced evidence which showed that Crump did not go on Craig's List and never used the air card to post anything on Craig's List.  J.B. also testified at trial that she did not put her picture on the Internet.

In addition to the sexually explicit photograph of 16-year old J.B., the Craig's List post included a phone number for a cell phone given to J.B. by Mayfield and some writing in the style of an advertisement, including the title, "Vanilla Treat - WFM - 21."  "WFM" is shorthand for "women for men."  Petitioner testified that J.B. told him she was 19, but J.B. testified that she never told Mayfield her age.[3]  When calls were received, Mayfield instructed J.B. to tell callers "$150 for a half hour, $175 for a full hour."  Later, when J.B. asked to go home, Mayfield said he would not take her home "because [she] didn't make money," and that he wanted her making money "having sex."  The jury also had as evidence Government's Exhibit 5, which included the sexually explicit photograph of J.B., age 16, as evidence of Petitioner's belief that J.B. was a minor.

---

[3] The jury could draw the inference that WFM-21 was meant to indicate the age of the woman (women) was 21.  If Mayfield thought J.B. was nineteen, the jury could have concluded he would not have needed to lie about her age in the Craig's List post, where he listed her age as twenty-one.  The jury could reasonably infer from this evidence that Mayfield believed that J.B. was a minor at the time he photographed her.

Based on this evidence, a rational trier of fact could have found that each of the essential elements under 18 U.S.C. § 2252A{a)(3)(B) was satisfied beyond a reasonable doubt.  Thus, Petitioner's counsel's withdrawing the motion for a judgment of acquittal and/or his failure to file such a motion would not have resulted in dismissal of the count charging the Petitioner with advertising child pornography.  As such, Petitioner cannot demonstrate prejudice, and the Court finds no ineffective assistance of counsel in this claim.

**2. Petitioner's Counsel Was Not Ineffective By Failing To Conduct A Reasonable Investigation By Not Interviewing Or Calling Darrick Mayfield As A Witness For The Defense**

Petitioner claims that it was ineffective assistance of counsel not to investigate and interview his brother, Darrick Mayfield.  In support of his argument, Petitioner submits an affidavit of Darrick Mayfield, who avers that, if asked, he would have testified that on June 7, 2007, Darrick Mayfield was in the car when Petitioner dropped J.B. off in Philadelphia, and that after J.B. exited Petitioner's car, she stated, "I am a grown woman, I can take care of myself."  Pet. Br. at Appendix A.

Where a petitioner claims that trial counsel is ineffective for failing to call a witness, "he must make a specific, affirmative showing as to what the missing evidence would have been [citation omitted] and prove that this witness's testimony would have produced a different result."  Patel v. U.S., 19 F.3d

11

1231 (7th Cir. 1994)(affirming district court's denial of 2255 motion without an evidentiary hearing).  Petitioner has failed to do so.

    The Petitioner has not shown a reasonable probability that the result of the proceeding would have been different with the testimony, had it been admitted.[4]  Strickland, 466 U.S. at 695 ("The defendant must show that there is a reasonable probability that .. the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.").  Even if the jury had heard that J.B. told Petitioner that she was a "grown woman" when she was dropped off in Philadelphia, it would not have been relevant to the jury's determination that Petitioner believed that J.B. was a minor at the time that he photographed her, which is the critical point in time.  Further, as set forth above, the government presented other evidence which the jury could have concluded that at the time that Petitioner took nude photos of J.B. and posted them on Craig's List, he believed that she was a minor.

---

    [4] Moreover, it is doubtful these alleged statements made to Darrick Mayfield would have been admitted.  First, the alleged statements of J.B. that she was a "grown woman" and "could take care of [her]self" are inadmissible hearsay.  Fed. R. Evid. 802.  That J.B. allegedly said she was "grown" and "could take care of [her]self" after Petitioner took sexually explicit photos of her and after Petitioner posted them on Craig's List could not be offered to show Petitioner's state of mind regarding J.B.'s age at the time he took those photographs and posted them on Craig's List, in violation of 18 U.S.C. § 2252A(a)(3)(B).  Petitioner has failed to offer any applicable exception to the hearsay rule.

Petitioner concedes that the jury would have been free to weigh the credibility of Darrick Mayfield and find that his testimony was less credible because he is the brother of the Petitioner. Accordingly, this claim is without merit.

**3.  Petitioner's Counsel Was Not Ineffective By Failing To Investigate Adequately And Introduce Statements By Petitioner's Co-Conspirator**

Petitioner argues that his counsel was ineffective for failing to investigate adequately and introduce statements made by Petitioner's co-conspirator, Coward. Specifically, Petitioner claims that the statements of Coward would have had the effect of "exonerating" Petitioner of the offenses charged. Pet. Br. at 13.

As set forth in Petitioner's Brief, Appendix B, Coward made the following statements to a private investigator hired by the defense:[5] When asked why J.B. and A.B. came to Atlantic City with Coward and Petitioner, Coward responded, "Of the purpose of just friendship." Coward admitted, however, that he took photographs of "one of" the girls "basically to post," to promote prostitution. Pet. Br. Appendix B. Coward answered that it was "correct" that Petitioner had "no knowledge of any of the illegal activities," and "[b]asically that [Petitioner] is innocent," and that Petitioner had "nothing to do with any of this." Pet. Br. Appendix B. Coward acknowledged, however, that there were two

---

[5] These statements were not made under oath or subject to the penalty of perjury. Pet. Br. at Appendix B.

13

young girls involved, and that he (Coward) was soliciting only "one of them" "for prostitution on the internet." Pet. Br. Appendix B. Notably, the investigator did not ask Coward questions about Petitioner's involvement with the other girl, and Coward did not make any statements regarding Petitioner's involvement with the second girl. Pet. Br. Appendix B.

Petitioner's counsel was not ineffective for failing to introduce Coward's statements because they were inadmissible hearsay, and, even if admitted, they would not have changed the result. Petitioner argues that Coward's statements should have been introduced because Coward was unavailable as a witness and they were statements against interest. Pet.'s Br. at 14. Coward's statements are inadmissible hearsay, however, because the Court found that Coward was *not* unavailable as a witness. The Court analyzed the "declarant unavailable" exceptions under Rule 804(a) of the Federal Rules of Evidence and specifically noted on the record that none applied.[6] Id. Counsel certainly cannot be deemed ineffective for failing to introduce Coward's statements when the Court ruled that Coward's out-of-court statements were inadmissible. Petitioner has not argued an alternative evidentiary basis that would have applied.

Moreover, Mayfield cannot show that Coward's statements, even

---

[6] Mayfield acknowledges that the Court found that Coward was not unavailable as a witness. Pet.'s Br. at 14 n.3.

14

if admitted, would have changed the outcome.  The record reflects considerable evidence from which the jury could reasonably conclude that Petitioner transported minor J.B. with the intent to engage in prostitution.  Coward's statements do not tend to prove that Petitioner unknowingly transported an individual under the age of 18, and they do not tend to disprove that Petitioner transported with the intent to engage in prostitution.  Although Coward stated that A.B. and J.B. went to Atlantic City for "just friendship," he also admitted that once they were in Atlantic City, Coward photographed one of the girls and put it on the Internet to promote prostitution.  Pet. Br. at Appendix B.  Coward's statements, even if credited by a jury, do not bear on Petitioner's intent to transport J.B. for purposes of prostitution; Coward's statements only tend to exonerate Petitioner with respect to "one" of the girls.  See Pet. Br. at Appendix B.

This Court finds no ineffective assistance of counsel as to this claim.

**CONCLUSION**

For the above reasons, the Court finds that Petitioner's claims of ineffective assistance of counsel must fail. Petitioner's claims here are based on a purported denial of his Sixth Amendment right to effective counsel.  Based on the analysis above, the Court finds that Petitioner's claims are without merit

under well established rules of law. Reasonable jurists would agree that in each of Petitioner's claims of error, he either did not show that his counsel's actions were unreasonable or he did not show that he suffered any prejudice. Therefore, the Court shall not issue a certificate of appealability.[7]

 

s/Renée Marie Bumb
RENÉE MARIE BUMB
United States District Judge

Dated: February 29, 2012

---

[7] A litigant may not appeal from a final order in a proceeding under 28 U.S.C. § 2255 without a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). The Local Appellate Rules for the Third Circuit state:

> At the time a final order denying a petition under 28 U.S.C. § 2254 or § 2255 is issued, the district judge will make a determination as to whether a certificate of appealability should issue . . . . If an order denying a petition under § 2254 or § 2255 is accompanied by an opinion or a magistrate judge's report, it is sufficient if the order denying the certificate references the opinion or report.

L. App. R. 22.2. A certificate of appealability shall not issue unless there is a "substantial showing of the denial of a constitutional right." 28. U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).